1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

7   JUAN C. RIOS,                                    Case No. 2:17-cv-03074-RFB-BNW

8              Plaintiff,                             **ORDER**

9       v.

10  JOSEPH LOMBARDO *et al.*,

11             Defendants.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Before the Court is Defendant Joseph Lombardo's Motion to Dismiss (ECF No. 62). For the reasons stated below, the motion is denied.

**I.    PROCEEDURAL HISTORY**

Acting *pro se* Plaintiff filed initiating documents, including a Complaint, on December 15, 2017. ECF No. 1. The Court issued a screening order on September 26, 2018, permitting a deliberate medical indifference claim to proceed. ECF No. 15. On September 26, 2018, Plaintiff filed a Complaint. ECF No. 16. On March 12, 2019, *pro bono* counsel was appointed to represent Plaintiff. ECF No. 18. The Court issued a Scheduling Order on December 28, 2019. ECF No. 31.

On June 8, 2020, the then-Defendants filed a Motion for Summary Judgement. ECF No. 36. Plaintiff filed an opposition and the Defendants Replied. ECF Nos. 45-46. The Court held a hearing on the motion on March 3, 2021, where the motion for summary judgment was denied. ECF No. 48. The Court ordered Defendant Aranas dismissed from the case and granted Plaintiff leave to amend the Complaint to add the Las Vegas Metropolitan Police Department ("LVMPD") or other defendants associated with the operation of the Clark County Detention Center ("CCDC"). Id. Plaintiff filed his First Amended Complaint ("FAC") on March 24, 2021, naming CCDC as a

defendant. ECF No. 49.

On June 25, Plaintiff sought leave to amend the FAC to name the Clark County Sheriff as the party operating CCDC instead of CCDC itself. ECF No. 58. On August 30, 2022, the Court granted leave to amend. ECF No. 59. On September 30, 2022, Plaintiff filed his Second Amended Complaint ("SAC") naming the Clark County Sheriff Joseph Lombardo as the sole named defendant. ECF No. 62. The SAC brings a single complaint for denial of adequate medical care against Defendant. Id. On October 27, 2022, the summons was returned executed regarding Defendant. ECF No. 64.

On November 10, 2022, Defendant filed the instant Motion to Dismiss the SAC. ECF No. 66. On November 25, 2022, Plaintiff Responded. ECF No. 68. Defendant filed a Reply on December 2, 2022. On January 25, 2023, the Court stayed discovery pending the outcome of the Motion to Dismiss. ECF No. 71.

## II.    FACTUAL ALLEGATIONS

On or about September 30, 2015, Plaintiff Juan Rios was arrested and detained pending trial at CCDC. Shortly before arrest, Plaintiff cut the tendons on his ring and pinky finger on his left hand. The fingers bent upward and were obviously disfigured.

One week after entering CCDC, medical staff took Plaintiff to get x-rays done on his injured fingers, which showed they were badly broken. Plaintiff requested medical care to repair his injured fingers while in CCDC. However, medical staff only provided pain pills and told Plaintiff that he would receive appropriate medical attention once he was sentenced and transferred to prison. Plaintiff was incarcerated pending trial for approximately seventeen months before his case was resolved and he was transferred to a prison.

At present, Plaintiff's injured fingers are not functional. They are paralyzed and disfigured. Had he received timely and appropriate medical attention, these fingers would have retained their functionality. Since, Plaintiff has been released from prison. Plaintiff has significant mental health concerns, including auditory hallucinations.

### III.   LEGAL STANDARD

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).


### IV.   DISCUSSION

Defendant raises three issues in his Motion to Dismiss, that the SAC: (1) does not plausibly allege a complaint against Defendant; (2) is time-barred; and (3) fails to relate back under Federal Rule 15(c). The Court addresses each in turn.

#### A.  Plaintiff's Medical Indifference Claim

The SAC is based on a claim for medical indifference under 42 U.S.C. § 1983. There are two elements to a successful section 1983 claim: (1) the conduct complained of must have been under color of state law, and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights. Jones v. Cmty. Redev. Ctr. of L.A., 733 F.2d 646, 649 (9th Cir. 1984). A

government entity is only liable for deprivation of rights caused by its own official policies, customs, or practices. <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 690-92 (1978). "Thus, our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

First, the Court addresses liability under <u>Monell</u>. Under <u>Monell</u>, a municipal actor can be held liable for affirmative policies or a "policy of inaction." <u>Jackson v. Barnes</u>, 749 F.3d 755, 763 (9th Cir. 2014). A policy of inaction is based on the "failure to implement procedural safeguards to prevent constitutional violations." <u>Id.</u>

Defendant argues that Plaintiff has not met the basic pleading standard because he has not identified any policy, custom, or practice that when enforced, caused the alleged constitutional violations. Plaintiff argues that his pleadings satisfy the requirements of <u>Monell</u>.[1]

The Court finds that the Plaintiff has met his burden to plead sufficient facts to state a <u>Monell</u> claim. Plaintiff specifically alleges that "CCDC had a policy or practice in place at the time of Plaintiff's detention there under which CCDC deferred treatment of pretrial detainees on the belief that they would receive treatment once they entered the Nevada Department of Corrections[, and that s]uch policy or practice was the moving force of the constitutional violation Plaintiff suffered." Plaintiff further supports this claim with allegations that multiple members of the CCDC medical staff, on multiple occasions, refused adequate medical care despite knowing the extent of his injuries. Plaintiff alleges these staff told him he would receive appropriate medical care once he was transferred to prison—despite that transfer ultimately taking more than a year-and-a-half and Plaintiff allegedly suffering greatly during this time.

Second, the Court evaluates Plaintiff's claim for medical indifference. Under the Fourteenth Amendment, pretrial detainees have a due process right to adequate medical care. A

---

[1] Both parties acknowledge that where Defendant is named, the claim is essentially against LVMPD, the organization Defendant leads. LVMPD, in turn, operates CCDC. See <u>Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dept.</u>, 533 F.3d 790, 799 (9th Cir. 2008) ("An official capacity suit against a municipal officer is equivalent to a suit against the entity.").

pretrial detainee's right to be free from punishment is grounded in the Due Process Clause, but courts borrow from Eighth Amendment jurisprudence when analyzing the rights of pretrial detainees. See Pierce v. Cnty. of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The Eighth Amendment prohibits the imposition of cruel and unusual punishment and embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (internal quotations omitted). When a prisoner alleges delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. See Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

The Court finds that Plaintiff has met his burden to plead a constitutional violation. Plaintiff alleges that, despite being aware of the extent of his severe hand injury, multiple CCDC officials made clear, purposeful decisions to delay his medical care. Plaintiff alleges that the delay led to further injury—namely the permanent paralysis and disfigurement of his hand. At this stage of proceedings, that is sufficient to survive a motion to dismiss.

**B.  Statute of Limitations**

"The statute of limitations applicable to an action pursuant to 42 U.S.C. § 1983 is the personal injury statute of limitations of the state in which the cause of action arose." Alameda Books, Inc. v. City of L.A., 631 F.3d 1031, 1041 (9th Cir. 2011). The applicable Nevada statute of limitations is two years. See Rosales-Martinez v. Palmer, 753 F.3d 890, 895 (9th Cir. 2014) (citing N.R.S. § 11.190(4)(e)). The statute of limitations period accrues when a party "knows or has reason to know of the injury." Golden Gate Hotel Ass'n v. City and Cty. of S.F., 18 F.3d 1482, 1486 (9th Cir. 1994).

The Court must first determine when the statute of limitations began to run. Based upon the allegations in the SAC, the two-year statute of limitations began to run the first week of October 2015—when medical personnel allegedly diagnosed Plaintiff's finger injuries and informed him that they would not treat him. Without tolling, the statute of limitations for his putative claim against Defendant would have elapsed in October 2017.

State law also governs the application of tolling doctrines when not inconsistent with federal law. See Hardin v. Straub, 490 U.S. 536, 537-39 (1989). Ordinarily, the claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Id. Nevada does recognize equitable defenses of waiver, estoppel, and tolling with regards to statutes of limitation. See, e.g., City of N. Las Vegas v. State Local Gov't Bd., 127 Nev. 631, 639-40 (Nev. 2011). It applies the Ninth Circuit's definition of equitable tolling, "focusing on whether there was excusable delay by the plaintiff: if a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." Id. (quoting Lukovsky v. City and Cty. of S.F., 535 F.3d 1044, 1051 (9th Cir. 2008). Equitable tolling is designed to excuse a plaintiff who had neither actual nor constructive notice of the filing period. See Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002).

Plaintiff argues that equitable tolling should apply because Plaintiff has continually been disadvantaged by circumstances in a way that bears on his diligence to maintain his claim: he was incarcerated at the inception of the suit, has been without housing much of the time since release,

1   suffers from serious mental health issues, and he is a native of Cuba who speaks limited English.

2          The Court finds sufficient circumstances to equitably toll the statute of limitations to at

3   least initiation this lawsuit in December 2017. The leading Nevada case on the considerations for

4   equitable tolling indicates that Courts should consider "the diligence of the claimant" and "the

5   claimant's knowledge of the relevant facts" in addition to "any other equitable considerations

6   appropriate in the particular case." Copeland v. Desert Inn Hotel, 99 Nev. 823, 826 (1983). Here,

7   during the relevant times, Plaintiff was incarcerated (and then without housing), spoke little

8   English, suffered from a physical disability (incapacity of his left hand), and suffered from serious

9   mental health issues. See also Fausto v. Sanchez-Flores, 482 P.3d 677, 679 (Nev. 2021)

10  ("[E]quitable tolling may apply in such cases when the plaintiff demonstrates reasonable diligence

11  in pursuing his or her claims and extraordinary circumstances that prevented him or her from

12  timely filing the complaint.").

13         Defendant argues that dismissal is still warranted unless the SAC "relates back" to the

14  original filing. Federal Rule of Civil Procedure 15(c)(1)(B) provides that an "amendment to a

15  pleading relates back to the date of the pleading when . . . . the amendment asserts a claim or

16  defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set

17  out—in the original pleading." Where the amendment changes the party against whom a claim is

18  asserted, in addition the party to be brought in must either have "(i) received such notice of the

19  action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known

20  that the action would have been brought against it, but for a mistake concerning the proper party's

21  identity." Fed. R. Civ. Pro. 15(c)(1)(C).

22         While Plaintiff concedes that he is unaware of when Defendant first received notice,

23  Plaintiff argues that his original complaint demonstrated he believed people at CCDC harmed him

24  through a refusal to provide medical attention.

25         Defendant argues that Sheriff Lombardo did not receive actual or constructive notice

26  within the requisite 90-day period and that Plaintiff has the burden to demonstrate notice.

27  Defendant cites Plaintiff's admission of not knowing when Defendant first received as

28  demonstrating no dispute that Lombardo did not receive notice. Defendant further argues that the

1    <u>Monell</u> claim against Lombardo does not arise out of the same facts and did not even originally

2    involve CCDC employees.

3         First, an admission that a party is unaware of when notice was first received does not

4    automatically mean that party has no evidence of appropriate notice. Second, the actual or

5    constructive notice must be provided within "the period provided by Rule 4(m)." Fed. R. Civ. Pro.

6    15(c)(1)(C). Federal Rule of Civil Procedure Rule 4(m) provides that, where a Plaintiff shows

7    good cause, the 4(m) period "must be extend[ed] . . . for an appropriate period." In this case, the

8    Court has already determined that there was good cause for a delay in service until May 2021,

9    when the first summons in this case issued. The first summons issued was to the "Director or

10   Administrative Head of Clark County Detention Center." Accordingly, this Court finds that

11   Plaintiff has provided sufficient proof that, within the 4(m) period that Defendant "knew or should

12   have known that the action would have been brought against it, but for a mistake concerning the

13   proper party's identity."

14        Finally, the SAC concerns the same "conduct transaction or occurrence" in the original

15   pleadings. In his initial Complaint, Plaintiff specifically invoked a claim for "deliberate

16   indifference to my serious medical need." In that Complaint, Plaintiff describes *inter alia* that his

17   two fingers are paralyzed and in pain, that these fingers were allowed to heal wrong, and that

18   medical care was denied to him at CCDC and prison.

19        Therefore, the Court finds that the SAC relates back to Plaintiff's original filing because

20   the SAC's claim arises out of the same conduct alleged in the original pleading and Defendant had

21   sufficient notice.

22

23   ///

24

25   ///

26

27   ///

28

**V.    CONCLUSION**

    **IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (ECF No. 66) is **DENIED** without prejudice.

    **IT IS FURTHER ORDERED** that the stay of discovery is lifted. The parties are directed to submit a proposed discovery plan and scheduling order to the Court by **October 13, 2023**.

DATED September 28, 2023

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**