1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

7   JUAN C. RIOS,                                              Case No. 2:17-cv-03074-RFB-BNW

8                    Plaintiff,                                        **ORDER**

9          v.

10  JOSEPH LOMBARDO, *et al.*,

11                   Defendants.

12

13          Before the Court is Defendant Joseph Lombardo's Motion for Summary Judgment (ECF No.

14  88) and Motion to Strike (ECF No. 94). For the following reasons, the motion to strike is denied

15  and the summary judgment motion is granted in part and denied in part.

16

17      **I.     PROCEDURAL HISTORY**

18          Acting *pro se* Plaintiff filed initiating documents, including a complaint, on December 15,

19  2017, pursuant to 42 U.S.C. § 1983. (ECF No. 1). After mandatory screening, the Court permitted

20  Plaintiff's deliberate medical indifference claim under the Eighth Amendment to proceed against

21  Nevada Department of Corrections ("NDOC") Medical Director, Dr. Aranas. Plaintiff's complaint

22  was filed. (ECF Nos. 15, 16). On March 12, 2019, *pro bono* counsel was appointed to represent

23  Plaintiff. (ECF No. 18). The Court issued a Scheduling Order on December 28, 2019. (ECF No.

24  31). On June 8, 2020, then-Defendant Aranas filed a Motion for Summary Judgement, which was

25  fully briefed. (ECF Nos. 36. 45-46). The Court held a hearing on the motion on March 3, 2021,

26  wherein the Motion for Summary Judgment was denied, and Defendant Aranas was dismissed

27  from the case. (ECF No. 48). The Court granted Plaintiff leave to amend his complaint to add the

28  Las Vegas Metropolitan Police Department ("LVMPD") or other defendants associated with the

operation of the Clark County Detention Center ("CCDC"). Id. Plaintiff filed his First Amended Complaint ("FAC") on March 24, 2021, naming CCDC as a defendant. (ECF No. 49). On June 25, Plaintiff sought leave to amend the FAC to name the Clark County Sheriff as the proper party operating CCDC, instead of CCDC itself. (ECF No. 58). On August 30, 2022, the Court granted leave to amend. (ECF No. 59). On September 30, 2022, the operative Second Amended Complaint ("SAC") naming Clark County Sheriff Joseph Lombardo as the sole defendant was filed. (ECF No. 62).

The SAC brings a single claim for denial of adequate medical care against Defendant Lombardo, alleging a policy or practice in effect at the time of Plaintiff's pretrial detention at CCDC, wherein medical treatment for pretrial detainees was deferred until they could receive treatment from the Nevada Department of Corrections ("NDOC") after conviction and transfer to prison ("NDOC"). Id.

On November 10, 2022, Defendant Lombardo filed a Motion to Dismiss the SAC. (ECF No. 66). The Court denied the Motion on September 28, 2023. (ECF No. 72). On October 17, 2023, Defendant moved for the Court's reconsideration of its Order on the Motion to Dismiss, and on September 30, 2024, the Court denied the Motion for Reconsideration. (ECF No. 79, 92). On July 24, 2024, Defendant filed the instant Motion for Summary Judgment. (ECF No. 88). On September 30, 2024, Plaintiff filed an Opposition to the Motion for Summary Judgment. (ECF No. 91). On October 15, 2024, Defendant filed a reply to Plaintiff's Opposition and a Motion to Strike the Opposition for untimeliness, and for Plaintiff's failure to comply with discovery obligations. (ECF Nos. 93, 94).

The Court's Order on Defendant's Motion for Summary Judgment and Motion to Strike follows.

## II.    FACTUAL BACKGROUND

The Court makes the following findings of undisputed and disputed facts.

### A.  Undisputed Facts

The Court finds the following facts to be undisputed. Plaintiff Juan Carlos Rios was taken

into the custody of the Las Vegas Metropolitan Police Department ("LVMPD") on September 30, 2015, and was held in detention at the Clark County Detention Center ("CCDC") until his sentencing and transfer to Nevada Department of Corrections ("NDOC") custody on February 7, 2017. At the time of his arrest, police noted that Plaintiff could not speak English and was experiencing homelessness. At some point before his detention at CCDC, Plaintiff suffered an injury to the fourth and fifth digits on his left hand.

Pre-trial detainees at CCDC go through an initial medical screening upon their arrival. The provider examining Plaintiff noted that he reported that he had "broke[n] his finger 2-3 months ago." Despite this, the provider noted that Plaintiff had "[g]rossly normal strength and function of all extremities." The medical records do not indicate any treatment plan for Plaintiff's injury was provided at the time he was initially screened.

In October 2015, Plaintiff submitted three medical request forms complaining of pain from his broken fingers and asked to be seen by a doctor.

On November 5, 2015, Plaintiff was seen by Dr. Anthony, who noted swelling of Plaintiff's left finger and complaints of pain received an x-ray of his left hand, which showed an "old ununited fracture of the ulnar styloid" with "no evidence" of an acute fracture or "other abnormalities." He was prescribed Acetaminophen.

On November 17th and 18th, 2015, Plaintiff requested "some type of medical treatment" such as "hand wrap or pain killers" due to the "serious pain" he was experiencing.

On November 22, 2015, Plaintiff was seen by a CCDC provider who noted Plaintiff's complaints of ongoing pain for about one year, that he could not make a tight grip with his left hand and was unable to bend his fourth finger, that an exam corroborated that pain, and that Plaintiff requested a splint. The provider noted he had been seen two weeks ago for the same complaint. After review with another provider, Plaintiff was prescribed Motrin and no splint, and instructed on gentle exercises of fingers.

On November 30, 2015, Plaintiff was seen by Dr. Anthony, in a follow up regarding his left-hand complaints. Among other observations, Dr. Anthony noted that Plaintiff complained of being unable to move his fingers and that they had been held in extension for more than one year,

and that he described an occasional "tingling electrical feeling" from his elbow to his fingers. Dr. Anthony noted he "took medications without change." Dr. Anthony found that Plaintiff suffered from "chronic pain" and recommended he see a hand Plaintiff "see [a] hand surgeon for further evaluation of the greater than one year concerns of the left little and ring fingers."

On December 8, 2015, Plaintiff was seen by a psychiatrist who noted Plaintiff's left hand and left index finger were in a fixed position, that he complained of being unable to open or close his left hand because of an insect bite two years ago, and that he needed surgery, but it was not helpful. The psychiatrist noted that Plaintiff stated he would be sentenced to nine years for battery.

In March of 2016, providers noted that Plaintiff requested medication for the significant pain in his fingers. According to the provider, Plaintiff stated, "it's been like that for more than a year. If I could just have some pain medication, that's all I'm requesting."

During his pre-trial detention at CCDC, Plaintiffs medical records reflect that the only treatment he received for his complaints of his injury and pain in his fingers was the above-described x-ray and prescriptions of Acetaminophen and Ibuprofen. In his declaration, Plaintiff states he was informed by CCDC that "I would receive appropriate medical care for my hand once I was sentenced and transferred to a prison with the Nevada Department of Corrections."

Plaintiff was transferred to the custody of the Nevada Department of Corrections ("NDOC") on February 2, 2017. His case was referred to the Utilization Review Committee to determine whether an independent specialist was necessary. In May of 2017, Plaintiff was referred by NDOC provider Dr. Bryan to a specialist for x-rays. In November, an orthopedic surgeon, Dr. Wullf, ordered radiographs of Plaintiff's injured hand, and determined that he suffered from lacerations of his nerves and tendon. In April of 2018, Plaintiff was referred to the Hand Center of Nevada by Dr. Bryan. In his declaration, Plaintiff states he was told by the specialist he saw there that he could not undergo surgery because he would be unable to complete the necessary physical therapy in prison. However, Plaintiff refused to sign the release of information form requested by NDOC providers, so the findings of the specialist were not reviewable by NDOC medical staff.

While in NDOC custody, Plaintiff continued to file grievances regarding his ongoing severe pain in his fingers and elbow, noting his pain as "a 9 out of 1 thru 10." In grieving about

1   the lack of medical attention to his hand, Plaintiff wrote a CCDC doctor told him "do [*sic*] to me
2   being sentence [*sic*] to prison my medical matters will be resolved there."

3       **B.  Disputed Facts**

4       The parties dispute whether CCDC officials told Plaintiff that the injuries to his fingers
5   would receive appropriate medical care once he was transferred to NDOC custody. The parties
6   dispute that there was any informal policy or custom regarding deferring medical treatment of
7   detainees who would later be transferred to NDOC custody. The parties also dispute whether the
8   injuries to Plaintiff's fingers were treatable to the extent that the ultimate injury Plaintiff complains
9   of—the loss of use of his dominant hand—could have been prevented by some medical
10  intervention other than the treatment he received while he was in CCDC custody. Defendant
11  provides an expert witness report who opines that no policy of CCDC could have caused Plaintiff's
12  severe injury that he would not have otherwise sustained. Likewise, the parties dispute whether
13  Plaintiffs alleged need for corrective surgery for his fingers was caused by his treatment during his
14  detention at CCDC.

15

16  **III.    LEGAL STANDARD**

17      **A.  Motion for Summary Judgment**

18      Summary judgment is appropriate when the pleadings, depositions, answers to
19  interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no
20  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."
21  Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive
22  law governing a matter determines which facts are material to a case. Anderson v. Liberty Lobby,
23  477 U.S. 242, 248 (1986).

24      The moving party bears the burden of showing the absence of material fact. Celotex, 477
25  U.S. at 323. The burden then shifts to the nonmoving party to show specific facts demonstrating a
26  genuine factual dispute for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.
27  574, 587 (1986). When considering the propriety of summary judgment, the court views all facts
28  and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of

<u>Anaheim</u>, 747 F.3d 789, 793 (9th Cir. 2014).

However, the nonmoving party may not merely rest on the allegations of his pleadings. He must produce specific facts by affidavit or other evidence showing a genuine issue of fact. <u>Anderson</u>, 477 U.S. at 256 (1986). In other words, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. <u>Zetwick v. Cty. of Yolo</u>, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

**B. Motion to Strike**

Local Rule 7-2 provides that a party "may not file supplemental . . . briefs, authorities, or evidence without leave of court granted for good cause," and may "strike supplemental filings made without leave of the court." LR 7-2(g). District courts have inherent power to control their own dockets, including the power "to determine what appears in the court's records" and to strike items from the docket to address conduct that is improper but does not warrant dismissal. <u>Ready Transp., Inc. v. AAR Mfg., Inc.</u>, 627 F.3d 402, 404-05 (9th Cir. 2010). Whether to grant a motion to strike lies within the discretion of the district court. <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970, 973 (9th Cir. 2010).


**IV.    DISCUSSION**

Mr. Rios brings one 42 U.S.C. § 1983 claim alleging deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment against Defendant Lombardo. Before considering Defendant's summary judgment motion on the merits, the Court briefly addresses the instant Motion to Strike.

**A. Defendant's Motion to Strike**

Defendant seeks to strike Plaintiff's Opposition to the Motion for Summary Judgment on the grounds that it was filed thirty-three days late. Federal courts in this circuit generally hold that

the untimeliness of a filing, even if extreme, is not, by itself, a sufficient reason for granting a motion to strike. See McCabe v. Arave, 827 F.2d 634, 639-40 (9th Cir. 1987) (concluding that a district judge did not abuse his discretion by denying the plaintiffs' request that the defendants' defenses be stricken from an answer that plaintiffs received on the day of trial); see also AT&T Corp. v. Dataway Inc., 577 F. Supp. 2d 1099, 1103 (N.D. Cal. 2008) (declining to strike an answer that was filed 170 days after the filing deadline where counsel admitted to his oversight, the plaintiff had been "vigorously defending and prosecuting" the action, and the moving party had not previously raised the plaintiff's failure to answer). Given the nature of the delay and Plaintiff's counsel's admission of oversight—which counsel swears was his error alone and in no way the fault of Plaintiff—the Court declines to strike the response on grounds of untimeliness.

Defendant also seeks to strike Plaintiff's Opposition based on his failure to comply with discovery obligations. However, Defendant does not explain how he is prejudiced by the Court's consideration of Plaintiff's Opposition, which marshals evidence from Plaintiff's medical records that were in Defendant's possession and control. In deciding whether to impose a sanction amounting to the exclusion of evidence based on discovery violations, if the exclusionary sanction would interfere with the resolution of the case on the merits, "[t]here must be a nexus between the party's actionable conduct and the merits of his case." Halaco Eng'g Co v. Costle, 843 F.2d 376, 381 (9th Cir. 1988). Moreover, the Court must consider the availability of lesser sanctions. R & R Sails, Inc. v. Ins. Co. of Pennsylvania, 673 F.3d 1240 (9th Cir. 2012).

Defendant fails to establish a nexus between Plaintiff's discovery violations and the evidence filed in support of the Opposition that Defendant seeks to exclude. The only evidence Defendant specifically objects to is Plaintiff's declaration, on the basis that the declaration was not previously disclosed. However, discovery rules do not require the disclosure of declarations of parties or other witnesses that will be used in summary judgment motions; the rules simply require the disclosure of the identities of witnesses and the relevant information within the witness' knowledge. See Fed. R. Civ. Proc. 26(a)(1)(A)(i) (requiring the parties to disclose "the name, and if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to

support its claims or defenses). Defendant cannot claim surprise or prejudice from the information in Plaintiff's declaration, which is consistent with the information alleged in Plaintiff's operative complaint. see Liberty Ins. Corp. v. Brodeur, 41 F.4th 1185 (9th Cir. 2022) (holding the district court abused its discretion in excluding the testimony of a witness where the witness had been identified and surprise or prejudice to the opposing was unlikely, because the content of the testimony was identified in the operative complaint). The Court finds Defendant is not prejudiced by the Court's consideration of that information in the form of Plaintiff's declaration.

In sum, given the strong policy favoring resolution on the merits, and the availability of lesser sanctions as a remedy for counsel's failure to timely file the Opposition, the Court, in its discretion, finds that striking the response is not an appropriate remedy for Plaintiff's discovery violations. Accordingly, the Court denies Defendant's motion and considers the relevant arguments and evidence contained in Plaintiff's Opposition.

### B. Defendant's Motion for Summary Judgment

The Court now turns to the merits of Defendant Lombardo's Motion. Section 1983 provides a private right of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Rios brings his § 1983 claim against Joseph Lombardo, the Clark County Sheriff at the time of Plaintiff's pretrial detention. Because Plaintiff does not allege any facts that demonstrate Lombardo personally participated in any alleged constitutional violation, the Court finds that Defendant Lombardo may not be found liable in his individual capacity. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (individual liability of a state official under § 1983 only exists upon a showing of "personal participation" in the alleged violation).

Plaintiff's claim, then, is brought against Lombardo in his official capacity. Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55 (1978). Accordingly, the Court finds that the "real party in interest" is the Las Vegas Metropolitan Police Department, the entity responsible for operating Clark County Detention Center. Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Center for Bio-Ethical Reform,

Inc. v. Los Angeles County Sheriff, 533 F.3d 780, 799 (9th Cir. 2008) ("An official capacity suit against a municipal officer is equivalent to a suit against the entity."). In other words, Plaintiff's § 1983 claim alleges that LVMPD is liable for holding a policy of some nature that was the driving force behind an unconstitutional action taken by LVMPD employees at CCDC. Monell, 436 U.S. at 690.

To prevail on his Monell claim, Plaintiff must prove: "(1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) 'the policy is the moving force behind the constitutional violation.'" Gordon v. Cty. of Orange, 6 F.4th 961, 973 (9th Cir. 2021) (quoting Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011)).

### 1.    Constitutionally Inadequate Medical Care

The Due Process Clause of the Fourteenth Amendment governs the conditions of confinement for pre-trial detainees. Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018). Pretrial detainees alleging that jail officials failed to provide constitutionally adequate medical care must show:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined including a decision with respect to medical treatment;
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

Sandoval v. Cnty. of San Diego, 985 F.3d 657, 669 (9th Cir. 2021). To satisfy the third element, the plaintiff must show that the defendants actions were "objectively unreasonable." Id. This objective standard requires a showing of "more than negligence but less than subjective intent—something akin to reckless disregard." Russell v. Lumitap, 31 F.4th 729, 738-39 (9th Cir. 2022).

The Court proceeds through the four factors in turn.

First, the Court finds that Plaintiff has established a genuine dispute of fact material to whether an intentional decision was made with respect to his medical treatment. Plaintiff provided

a sworn statement that CCDC officials denied him care on the basis that appropriate care would be provided after his post-conviction transfer to NDOC custody. A jury could find that the record is consistent with Plaintiff's statement. After Plaintiff was seen by CCDC medical providers and his finger injury was identified, he was prescribed Acetaminophen. Plaintiff continued to submit repeated medical requests explaining his severe ongoing pain and specifically requested further treatment, including pain medication, a hand wrap, and/or a splint. Plaintiff was then prescribed Ibuprofen. Shortly thereafter, CCDC provider Dr. Anthony found that that Plaintiff reported no change with the pain medication he had been prescribed and was taking. Dr. Anthony recommended Plaintiff see a hand surgeon for his "chronic pain" and "greater than one-year concerns." The record reflects Plaintiff did not see a hand surgeon during his detention at CCDC, that he was only treated with mild pain medication, and that he continued to complain of severe pain while taking said medication. These facts render triable the question of whether an intentional decision regarding Plaintiff's medical treatment was made. See Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1070 (9th Cir. 2016) (holding that evidence of a failure to act is sufficient for this prong).

Second, the Court finds the above facts could establish that the failure to provide additional medical treatment, beyond Acetaminophen and Ibuprofen, despite Plaintiff's ongoing complaints and the CCDC provider recommendation that Plaintiff see a hand surgeon for his "chronic pain," put Plaintiff at substantial risk of suffering ongoing severe pain. See e.g., Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (finding deliberate medical indifference where a failure to treat a prisoner's condition could result in "the unnecessary and wanton infliction of pain."). Likewise, given Plaintiffs repeated complaints of severe pain which were not abated by the mild pain relievers prescribed, and in light of the CCDC provider's determination that Plaintiff's "chronic pain" warranted his seeing a specialist, a factfinder may conclude that CCDC officials knew of a substantial risk that Plaintiff would continue to suffer unnecessary pain from the fact that "the risk was obvious." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Third, for similar reasons, the Court finds that a jury could conclude that the response by CCDC to Plaintiff's injury and continued complaints was "objectively unreasonable[.]" Gordon,

888 F.3d at 1125. The record demonstrates that Plaintiff's pain was identified by multiple providers as severe and ongoing. Dr. Anthony noted that Plaintiff reported no change despite taking the prescribed Ibuprofen, and determined seeing a hand surgeon was an appropriate medical intervention. Yet Plaintiff did not see a hand surgeon for over a year after that recommendation, while Plaintiff was still in CCDC detention. Plaintiff again requested pain medication in March of 2016, yet no additional medication was prescribed. Viewing the facts in the light most favorable to Plaintiff, a jury could find that reasonable officials under the circumstances would have taken further measures to treat Plaintiff, including but not limited to, referring him to a hand surgeon, as recommended by Dr. Anthony, or prescribing stronger pain medication.

Lastly, Plaintiff must show that the failure to provide Plaintiff additional treatment caused the harm he ultimately suffered. Here, the Court finds that Plaintiff has failed to provide sufficient evidence for a jury to conclude that the lack of treatment during his pretrial detention caused the permanent injury for which Plaintiff seeks relief: the loss of functionality to his fingers and the need for corrective surgery. There is no evidence on the record showing that additional treatment would have prevented that ultimate injury. Plaintiff does not provide evidence sufficient to create a triable issue as to whether hand surgery or other medical intervention during his detention at CCDC would or could have prevented the loss of functionality to his fingers. Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) ("[M]ere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference . . . unless the denial was harmful.") (*per curiam*). Without sufficient evidence demonstrating that his medical treatment, or lack thereof, while detained at CCDC was the cause of the ultimate loss of his finger functionality, the Court finds that Plaintiff has not met his burden to rebut Defendant's medical expert report, which opines that hand surgery could not have prevented the permanent injury to Plaintiff's fingers. Celotex, 477 U.S. at 322 (1986).

However, the Court finds a genuine dispute of fact exists as to whether the failure to provide additional treatment to Plaintiff caused Plaintiff harm in the form of ongoing unnecessary pain. As described above, Plaintiff consistently complained of severe pain throughout his detention at CCDC, including while he was taking the mild pain killers prescribed by CCDC providers. After

- 11 -

his transfer to NDOC custody, Plaintiff complained that his pain continued to be severe, a 9 on a scale of 1 to 10, and that he was told by CCDC that his complaints would be addressed only after his transfer to prison. Although Defendant argues that the undisputed fact that Plaintiff was seen by multiple providers and prescribed medication shows that he had access to adequate medical care, a jury could find that the care Plaintiff received amounted to deliberate indifference. See Russell, 31 F.4th at 740–41 ("a plaintiff need not prove complete failure to treat . . . although medical negligence is not by itself unconstitutional, the care rendered can be so inadequate to the circumstances known to the medical staff as to amount to deliberate indifference.").

The Court therefore finds that the question of whether Plaintiff's constitutional right to adequate medical care was violated is a triable issue of fact.

## 2.    Monell Liability

To prevail on his Monell claim against LVMPD, in addition to establishing a constitutional deprivation, Plaintiff must show that LVMPD had a policy which amounted to deliberate indifference to Plaintiff's right to medical care, and that the policy was the moving force behind the constitutional deprivation Plaintiff suffered. Gordon, 6 F.4th at 973.

To establish that LVMPD had a Monell policy, Plaintiff can show that the policy was not official but rather a custom or informal policy. Id. at 974 ("an unconstitutional policy need not be formal or written to create municipal liability.") A plaintiff can show an unconstitutional "policy of inaction." Jackson v. Barnes, 749 F.3d 755, 764 (9th Cir. 2014). Plaintiff must further establish an affirmative causal link between the municipal practice and the alleged constitutional violation. Bell v. Williams, 108 F.4th 809, 824 (9th Cir. 2024).

The Court finds sufficient evidence for a trier of fact to conclude that CCDC had an informal policy or custom of inaction regarding the medical care of detainees. In Plaintiff's declaration, he states that CCDC officials told him the medical issues he had been complaining of during his nearly sixteen months of pretrial detention would be resolved after his sentencing and transfer to NDOC custody. A jury could find the record is consistent with Plaintiffs testimony. After his transfer to NDOC custody, Plaintiff filed a grievance regarding his ongoing medical

issues and stated that CCDC doctors told him treatment would be deferred until his transfer. Despite a treatment plan decided upon by a CCDC doctor in December of 2015 that Plaintiff see a hand surgeon regarding his "chronic pain," Plaintiff was not referred to a hand surgeon until *after* his transfer to NDOC custody. When Plaintiff complained to a CCDC psychiatrist of his ongoing pain in December, rather than providing a treatment plan or recommendation for that complaint, the psychiatrist noted that Plaintiff had been sentenced to prison. A jury could find that the inclusion of this information in Plaintiff's medical records suggests that CCDC providers considered whether a pretrial detainee had been sentenced in determining what treatment a detainee should be provided.

Defendant provides evidence of CCDC's official policies and argues they do not reflect a policy of deferring medical treatment to NDOC. However, this is not dispositive of the question of whether CCDC had an *unofficial* policy of delaying treatment. A jury could find that CCDC had an unwritten policy of delaying costly medical treatment to pre-trial detainees who would be sentenced to prison and whose medical treatment could be provided for by the state of Nevada, rather than CCDC. The Court finds this is a reasonable inference from the alleged pattern of failing to provide treatment to address Plaintiff's ongoing chronic pain and the failure to follow recommendations for more treatment from specialist(s) as recommended by Dr. Anthony. A factfinder could determine that such a policy amounts to deliberate indifference to the serious medical needs of pretrial detainees. See Jones v. Johnson, 781 F.2d 769, 771-772 (9th Cir. 1986), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014) (finding deliberate indifference where the incarcerated plaintiff's need for surgery to assuage his pain and discomfort was denied due to prison budget constraints).

Finally, the Court finds a triable issue of fact exists as to whether CCDC's alleged informal policy of deferring medical treatment for pretrial detainees to NDOC was the moving force behind the constitutional injury Plaintiff suffered. As discussed above, Plaintiff will testify that officials told him directly that the reason he was given for his lack of treatment while in CCDC custody was that he would be treated by NDOC after transfer to prison. And it is undisputed that he was not seen by a specialist until transfer to NDOC custody—when an NDOC provider finally referred

him to a hand surgeon. Plaintiff's evaluation by a hand surgeon ultimately occurred more than two years after Dr. Anthony's recommendation that Plaintiff see the surgeon for his chronic pain. Given that Plaintiff experienced chronic and apparently unabated pain throughout his detention at CCDC and was never provided additional treatment despite additional—and more costly— treatment being recommended by a CCDC doctor, a trier of fact could find that LVMPD's unofficial policy of deferring medical treatment for detainees sentenced to prison until after their transfer to NDOC custody was the moving force behind Plaintiff suffering unnecessary pain.

In sum, the Court finds Plaintiff's has provided sufficient undisputed and disputed evidence to show the existence of an unconstitutional LVMPD custom of inaction with regards to the serious medical needs of pretrial detainees housed at CCDC, and that said informal policy caused Plaintiff unnecessary pain and suffering, in violation of Plaintiff's Fourteenth Amendment right to adequate medical care.

## V.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 88) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike (ECF No. 94) is **DENIED**.

**IT IS FURTHER ORDERED** that a Joint Pretrial Order shall be filed by the parties by **May 9, 2025**.

**DATED:** March 25, 2025.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**